## G. A. STOWERS FURNITURE CO. v. AMERICAN INDEMNITY CO.
### (No. 8974.)

Court of Civil Appeals of Texas. Galveston.
May 4, 1927.

Rehearing Denied May 19, 1927.

1. **Insurance** ⟜512—**Insurer against auto-mobile accident liability acting in good faith was not bound to settle claim, though know-ing verdict might exceed policy.**

Where insurer of automobile owner against liability for personal injuries by reason of automobile accident in amount not exceeding $5,000 was acting in good faith, it was not bound to pay an offered settlement of $4,000 for personal injuries rather than to insist on its right to try the case, though it knew that there was great danger that a trial would result in a verdict for much more than the policy.

2. **Insurance** ⟜665(4)—**That automobile ac-cident liability insurer refused settlement in good faith held shown⁕ in suit by insured for liability in excess of policy.**

In suit by one insured against liability from automobile accident, insurer's refusal to accept offer of settlement for less than the amount of the policy, in action where trial resulted in judgment for sum exceeding policy, which in-sured was compelled to pay, evidence *held* to show that the insurer acted in good faith.

3. **Insurance** ⟜661—**Where judgment for au-tomobile accident exceeded insurance policy and insured sued insurer for refusing set-tlement, testimony concerning injuries was inadmissible.**

In action by one insured against liability from automobile accident against insurer, for refusal to accept offer of settlement for ac-cident for less than amount of the policy, in action where trial resulted in judgment for more than policy, which insured was compelled to pay, evidence as to the seriousness of the injuries was inadmissible.

4. **Insurance** ⟜598—**Insured who paid injury judgment held entitled to interest from insur-er; latter's tender being conditional.**

Where insurer against liability from auto-mobile accident tendered insured amount due under policy only on condition that the insured execute and deliver a full release of claims arising from the suit or injury, and insured re-fused tender, insured was entitled to recover interest from insurer on the sum due.

Appeal from District Court, Harris County; W. E. Monteith, Judge.

Suit by the G. A. Stowers Furniture Com-pany against the American Indemnity Com-pany. From the portion of the judgment denying recovery of a part of the sum de-manded plaintiff appeals, and defendant com-plains of the portion allowing interest. Af-firmed.

Atkinson & Atkinson and Fulbright, Croo-ker & Freeman, all of Houston, for appellant.

Fouts, Amerman, Patterson & Moore, King & Wood, Joe Moore, Andy C. Wood, and R. C. Patterson, all of Houston, for appellee.

LANE, J. Stowers Furniture Company was, on the 23d day of January, 1920, en-gaged in the business of selling furniture in the city of Houston, Tex., as it had been for many years prior thereto; in connection with its business it owned and operated a certain automobile truck. On said 23d day of Janu-ary, 1920, one of its servants was in charge of its truck on Austin street in the city of Hous-ton at or about the hour of 7 p. m., and while being driven on said street said truck came in contact with a wagon which some one had left standing on the street near the curbing and was by such contact disabled and so in-jured in such manner that the servant could not longer operate it and he left it standing on the street after dark unlighted and with-

out an attendant; shortly after it was so left a Ford coupé, occupied by Miss Mamie Bichon and driven by one Jamail, came in collision with the same. By reason of said collision the automobile in which Miss Bichon was riding was turned over and she was seriously injured. Miss Bichon brought suit for damages against the Stowers Furniture Company for $20,000.

At the time of such injury and the filing of said suit the Furniture Company held a policy issued to it by the Indemnity Company for the sum of $5,000, indemnifying said Furniture Company against loss imposed by law upon it for injuries accidentally suffered by any person or persons by reason of the automobile owned and operated by the Furniture Company. . The policy in question contained substantially the following stipulations and agreements, to wit: That in the event a claim is made or suit brought for an injury for which the Indemnity Company would be liable in whole or in part, under the terms of the policy, the assured should not voluntarily assume any liability, settle any claim, or incur any expense, except at its own cost, or interfere in any negotiation for settlement or legal proceedings without the written consent of the Indemnity Company; that the Indemnity Company would defend in the name and on behalf of the Furniture Company any suit, even if groundless, brought against it to recover damages on account of such happenings as are provided for by the terms of the policy; liability of the company should be limited to the sum of $5,000 for the injury of any one person and to $10,000 regardless of the number of persons injured, but irrespective of such limitation the Indemnity Company would pay all costs taxed against assured in any legal proceedings defended by the Indemnity Company, all interest accruing after entry of judgment upon such part thereof as shall not be in excess of its liability and expenses incurred by the assured for such immediate medical or surgical relief as is imperative at the time of the accident, together with all the expenses incurred by it in investigating such accident, the adjustment of any claim, or the defense of any suit resulting therefrom.

Under and by virtue of the terms of the policy the Indemnity Company took charge of the defense of the above-mentioned suit and employed counsel to defend same.

Upon trial, judgment was rendered in favor of Miss Bichon against the Furniture Company for $12,207 and costs of suit. From such judgment an appeal was taken to the Court of Civil Appeals, where the same was affirmed. Stowers Furniture Co. v. Bichon, 254 S. W. 606. A writ of error was applied for, and refused by the Supreme Court.

After the judgment became final the Furniture Company paid the same in full, which, including interest, amounted to $14,103.15. Thereafter the Indemnity Company tendered to the Furniture Company the sum of $5,000 and interest thereon to date upon such sum upon condition that the Furniture Company execute to it a release from further liability under its policy. Such tender was refused by the Furniture Company.

After the payment by the Furniture Company of the $14,103.15 adjudged against it in favor of Miss Bichon, the Furniture Company demanded of the Indemnity Company the payment of the sum so adjudged against it, and upon the refusal of the Indemnity Company to pay it more than $5,000 the Furniture Company brought this suit against the Indemnity Company to recover the sum of $14,103.15 and interest thereon from the date on which it paid such sum to Miss Bichon.

The Furniture Company in its second amended petition, upon which it went to trial, substantially alleged the facts above, set out the allegations made by Miss Bichon in her petition in her suit against the Stowers Furniture Company, to wit, that on the night of the 23d day of January, 1920, the Furniture Company left a large truck in Austin street, Houston, Tex., in such manner as to obstruct a portion of said street; that said night was dark and rain was falling; that there were no lights on said truck and therefore it could not be seen by those traveling along said street; that the ordinances of the city of Houston required such truck to have two lights on the front end thereof and a red light on the rear end thereof after dark; that by reason of the negligent acts of the Furniture Company in leaving its truck in said street at night unlighted and unattended, an automobile in which she was riding came in collision therewith, causing her back to be badly wrenched, her kidneys to be seriously injured, a cut on the bridge of her nose, which left a permanent scar, several cuts and bruises on her chin, temple and ear, a wound on her throat which injured the thyroid gland, caused by some sharp instrument penetrating her throat and cutting some arteries causing her a great loss of blood and inflicting upon her a permanent scar, her heart to be seriously strained and ruptured, which was liable to prove fatal at any time and which was incurable, and causing her to suffer intense pain and suffering.

The Furniture Company then alleged the recovery by Miss Bichon, and for grounds for a recovery from the Indemnity Company it alleged that the only defense it had to the suit of Miss Bichon, which was under the provisions of the policy issued by the Indemnity Company to it in the absolute control of said Indemnity Company, was that the servant of the Furniture Company, in charge of said truck at the time of the collision with the aforesaid wagon, on the happening of said collision, had gone two or three blocks to a drug store to telephone the plaintiff's store and inform the plaintiff of the accident; that

the collision of the automobile, in which Miss Bichon was a passenger, with plaintiff's truck, occurred while plaintiff's servant was away attempting to telephone plaintiff, all of which occurred some 10 or 15 minutes after plaintiff's truck had collided with the aforementioned wagon; that plaintiff, or the defendant herein who was conducting plaintiff's defense in said cause, had to rely for this defense upon the naked statement of plaintiff's servant, who was a negro boy and interested in clearing himself or showing himself guilty of no wrong, whereas the said Mamie Bichon had two reputable white witnesses who were in nowise interested in the suit who testified in her behalf that they saw the truck standing where it had collided with the wagon at about 7 o'clock that night on the 23d day of January, 1920, and the undisputed evidence showed that the accident did not occur until more than an hour later, all of which facts were well known to defendant long prior to said trial, or could have been known by it by the exercise of ordinary care and diligence.

Further pleading, the plaintiff alleged as follows:

"The plaintiff further shows to the court that it became the duty of the defendant and the obligation of the defendant on taking charge of plaintiff's defense in the aforesaid suit to conduct same in good faith and for this plaintiff's interest as well as for the defendant's own interest and without negligence on the part of said defendant, and that it further became the duty and obligation of said defendant to conduct said suit and to make such settlement with the said Miss Bichon or her attorneys as a reasonably prudent person would have made under the same or similar circumstances for the protection of this plaintiff's interest; that after the defendant took charge of this plaintiff's defense, as aforesaid, and a short time prior to the trial of said suit, Miss Mamie Bichon and her attorneys entered into a negotiation with defense counsel who was representing this plaintiff in said suit for a settlement of her cause of action and offered to accept in full settlement of her said claim for damages on account of injuries she had sustained in said accident in the sum of $4,000, which was $1,000 less than the maximum indemnity of $5,000 guaranteed to this plaintiff by defendant by virtue of said policy; that defendant informed this plaintiff that said proposition to accept $4,000 in full settlement of said claim on the part of said Miss Bichon was a good settlement and should be accepted; that it (defendant) would pay the sum of $2,500 on said compromise settlement if this plaintiff would pay the additional $1,500 necessary to make the settlement, and when this plaintiff objected to paying $1,500, since said suit could be settled for $4,000, $1,000 less than the face value of its policy of insurance it carried with defendant company, the defendant herein informed this plaintiff that said case was very dangerous and that if it went to trial the said Miss Bichon would likely get in excess of $6,500 and that plaintiff's portion of the judgment over and above the $5,000 indemnity provided for in said policy would likely be in ex-

cess of $1,500 which the defendant then insisted that this plaintiff should pay on said compromise settlement, and when this plaintiff refused to be coerced into paying said $1,500, since said suit could be settled by the defendant for $1,000 less than the face value of its policy, which defendant said was a good settlement, the defendant thereupon refused to make said settlement and permitted the cause to proceed to trial, well knowing and believing that the said trial would result in a judgment substantially in excess of $5,000; and that said defendant willfully and negligently refused to make said settlement, well knowing at the time that it did so that it was jeopardizing the interest of this plaintiff in a very large amount as was afterwards shown by the verdict and judgment, and had defendant acted in good faith and as the ordinarily prudent person would have acted under the same circumstances as it was its duty to do, since it had absolute control and charge of the plaintiff's defense, it would have settled said suit for the said $4,000 without demanding that this plaintiff pay the portion thereof, since the same could have been settled for $1,000 less than the face value of the aforesaid policy of insurance, and plaintiff would have been relieved of all liability by virtue of said suit; but on account of defendant's negligence and acting in bad faith and refusing to make said settlement as aforesaid and permitting said cause to proceed to trial, a verdict and judgment was rendered against this plaintiff in the sum of $12,207 and costs of court, together with interest at the rate of 6 per cent. per annum from date of said judgment, which, when paid on the 3d day of January, 1924, including court costs, came to $14,103.15, whereby the defendant not only became bound and obligated to pay this plaintiff the said sum of $5,000 and costs of court as provided for in said policy, but the excess of said judgment over and above said $5,000 and costs of court, all of which this plaintiff was compelled to pay by reason of said defendant's lack of good faith and negligence in refusing to make settlement of said suit for $4,000, as aforesaid, which sum, though often demanded, the said defendant has refused to pay, or any part thereof, to plaintiff's damages in the sum of $14,103.15, together with 6 per cent. interest thereon from January 1, 1924."

The material portion of the answer of the defendant Indemnity Company is as follows:

"That after the happening of the said accident made the basis of this suit the defendant investigated it, and after suit was filed and after citation was forwarded to it by plaintiff herein, it made defense of said suit and defended it through all the courts. That under the terms and provisions of said contract it was to have control of the defense of said suit and no settlement was to be made without its consent, it having the option of settling or defending the suit as it might deem best, and it was under no duty to settle said suit, and it elected to and did defend the said suit. That after making investigation in reference to said accident and the extent of the injuries suffered by Mamie Bichon, this defendant reached the conclusion that the facts of the accident were of such nature that it could and did reasonably suppose that judgment would ultimately result in a verdict for the defendant, and that the

injuries suffered by Mamie Bichon as a result of the accident were not of a permanent nature or of such seriousness as to justify a settlement of this case for $4,000. * * *

"For further and special answer herein, defendant says that by the terms of said contract of indemnity its liability was limited, as hereinbefore alleged, to $5,000, with interest thereon at 6 per cent. from the date of the judgment to the affirmance thereof. This defendant says that it has already carried out the terms and provisions of said contract except the payment of $5,000 and interest thereon, which immediately upon the affirmance of this case by the Supreme Court was tendered to the plaintiff herein and plaintiff was notified that defendant was ready and willing to pay the same, but was notified by the plaintiff that plaintiff would not release this defendant from liability, which it was entitled to be released from if it complied with its contract, and stated it was useless to tender the actual money because plaintiff would not accept it; that this defendant has always been ready and willing to pay the limit of its liability, to wit, $5,000, with interest at 6 per cent. until plaintiff's notice it would not be accepted, and is now ready and willing to pay. the same, which amount next above mentioned represents principal of $5,000, interest thereon to the date of the notification that tender would not be effective, together with court costs, which are also tendered, which notification to the plaintiff and the understanding that a complete release from liability would not be effected was within ten days of the affirmance of said case by the Supreme Court."

A jury was impaneled and sworn to try the cause, but after all the evidence was introduced the court concluded, as expressed in the judgment, that there were no issues under the pleadings and evidence for a decision by the jury, and, so concluding, withdrew the case from the jury and announced that the Indemnity Company was entitled to judgment, except as to the tender of $5,000, by it to the Furniture Company in its pleadings, together with interest at the rate of 6 per cent. per annum from the 31st day of May, 1921, same being the date upon which the case was tried in the trial court and the date from which the Furniture Company paid interest to Miss Bichon. In accordance with such announcement, judgment was rendered for the Furniture Company for $5,000, with interest from the 31st day of May, 1921, against the Indemnity Company, together with all costs of suit.

From that part of the judgment refusing it a recovery for the sum paid by it in satisfaction of the Bichon judgment, in excess of the sum awarded to it against the Indemnity Company, the Furniture Company has appealed, and the Indemnity Company complains of so much of the judgment as awards to the Furniture Company a recovery of interest from May, 1921.

[1] Appellant Furniture Company contends for a reversal of that part of the judgment refusing it a recovery of the sum sued for by it over and above that tendered by the Indemnity Company, in that as the Indemnity Company had by the terms of its policy agreed to defend the suit of Miss Bichon against it, and reserved the sole right to settle the same, it was the duty of the Indemnity Company to make settlement of the cause by paying the $4,000 which Miss Bichon had agreed to accept in settlement, it being made manifest to said Indemnity Company, during the progress of the litigation, that the trial of the cause was practically certain to result in a judgment against it, the Furniture Company, in excess of the liability of the policy.

More clearly stated, the Furniture Company's contention is that as the Indemnity Company agreed by the terms of the policy to defend the suit and therein reserved the exclusive right and option to settle the same, it was obligated, not only to defend the suit, but where, as in this case, the facts in its possession led it and its advising counsel to believe that the suit was a dangerous one and one in which there was a strong probability that upon a trial a recovery would be had for a sum largely in excess of $5,000, the sum for which said company was liable under the terms of its policy, and where, as in this case, the undisputed evidence shows that said company was in possession of such facts and realized such danger prior to the trial of the cause, and where, as in this case, Miss Bichon had, after the aforesaid facts were known to the Indemnity Company and its advising counsel, agreed to settle the suit for $4,000, it being agreed in the policy that the Indemnity Company would defend such suits and that it reserved the right to settle any such claim or suit as might be brought against the Furniture Company, the Indemnity Company was also obligated to settle the claim or suit when it became apparent to it that the same could have been settled for a sum less than $5,000, and that as by reason of its failure to agree to and make such settlement assured lost above the sum for which the Indemnity Company was liable under specific terms of the policy, the Furniture Company was entitled to a judgment for the full amount it had to pay Miss Bichon, to wit, $14,103.15.

We feel constrained to overrule such contention. There is no suggestion that appellant failed to faithfully and vigorously defend the suit to its final determination by the Supreme Court; that it did do so seems to be admitted, but it chose to defend the suit rather than settle for $4,000.

It is true that prior to the trial of the cause and prior to the offer of settlement the Indemnity Company and its counsel were fully advised of the serious nature of Miss Bichon's injuries, and that if she was entitled to a recovery under the facts she would probably recover a judgment largely in excess of $5,000; that they were advised that

the negro who was in charge of the truck of the Furniture Company at the time of its collision with the car in which Miss Bichon was riding would testify that at the time he ran into the wagon on Austin street and disabled his truck it was dark; that immediately thereafter he went across the street to telephone to his employers, informing them of his trouble; that he was only away from the truck about 15 minutes and that during such interval the collision occurred; that he had no lights on the truck at the time he left it in the street, as the contact with the wagon put his lights out of use; that they were advised that two reputable white men would testify to facts showing that the truck, after the collision, had been left in the street unlighted and unattended for more than an hour before the collision which resulted in the injury to Miss Bichon; and that they knew that Miss Bichon was a respectable white business lady. The facts stated were also known to the Furniture Company and its advising counsel. It was also shown that notwithstanding the fact that such facts were known to said parties, and that all agreed that if the suit was permitted to go to trial there was great danger that in a trial before a jury a judgment for a much larger sum than $5,000 might be recovered by Miss Bichon, that the proffered settlement for $4,000 was refused by the Indemnity Company.

[2] We do not think the Indemnity Company was, by the terms of the policy, under any obligation to do more than faithfully defend the suit. As before stated, it had not agreed to settle the suit, but had reserved the right to do so. It had the unquestioned right to defend the suit to the end that it might not be called upon to pay a judgment which might be rendered in favor of Miss Bichon. However, if the question of bad faith had any place in the trial of the cause, we are unable to see that bad faith was shown. Not only did counsel for the Indemnity Company conclude that there was evidence which would, if believed by the jury, justify a verdict in favor of the Furniture Company, or that they could probably obtain a verdict upon trial for a sum less than $5,000, but it seems that eminent counsel for the Furniture Company, who were permitted by the Indemnity Company to join, and who did join in, the defense, vigorously defended the case in the trial court, in the Court of Civil Appeals, and the Supreme Court. Under the facts shown, the Indemnity Company had the right to refuse the proffered settlement and to defend the suit against a larger recovery or any recovery whatever, no matter how slender its chances of success. It was not under obligation to abandon what it believed to be a defense to the suit because there was a strong probability that a refusal of a settlement would result in the rendition of a judgment in excess of

its liability under its policy, and settle the suit for $4,000 so as to assure the Furniture Company against loss. The Furniture Company cannot be heard to say, while it is true that by the terms of the policy we had agreed with you that you should defend the suit so as to protect yourself, and that you reserved the right to settle solely for your own protection, we think that when it became apparent that by a settlement we could have been absolutely saved, you should not have availed yourself of your conceded right to defend the suit, but you should have, for the sake of saving us, foregone such right and have settled the suit for $4,000.

It is apparent that not only the Furniture Company, the Indemnity Company, and their attorneys entertained a bona fide belief that the cause of action of Miss Bichon might be defeated in whole, or that her recovery could be held down to a sum less than $4,000, the amount of the proffered settlement, but that such belief was shared in by the firm of Atkinson & Atkinson, who represented Miss Bichon in her suit against the Furniture Company, and who are now representing the Furniture Company in this suit, for they certainly would not have agreed for Miss Bichon to have accepted $4,000 in settlement of a cause in which they felt certain of obtaining a much larger judgment. We think as an incident tending to show that the Furniture Company had faith in the final defeat of the suit, or that any judgment that might be recovered would not largely exceed $5,000, is the fact that when the Indemnity Company offered to pay $2,500 of the proposed $4,000 settlement if the Furniture Company would pay the balance of $1,500, said company refused to pay the $1,500.

The conclusions above expressed are supported by the following authorities: Nesson v. U. S. Casualty Co., 201 Mass. 71, 87 N. E. 191, 131 Am. St. Rep. 390; Rumford Falls Paper Co. v. Fidelity & Casualty Co., 92 Me. 574, 43 A. 503; C. Schmidt & Sons Brewing Co. v. Travelers' Ins. Co., 244 Pa. 286, 90 A. 653, 52 L. R. A. (N. S.) 126; Wisconsin Zinc Co. v. Fidelity & Deposit Co., 162 Wis. 39, 155 N. W. 1081, Ann. Cas. 1918C, 399; Wynnewood Lumber Co. v. Travelers' Ins. Co., 173 N. C. 269, 91 S. E. 946; Auerbach et al. v. Maryland Casualty Co., 236 N. Y. 247, 140 N. E. 577, 28 A. L. R. 1294.

[3] By several assignments appellant complains of the refusal of the court to permit Miss Bichon and others to testify as to the serious nature of her injuries. Such testimony was clearly inadmissible in the trial of the present case. The attempt to introduce such testimony was an effort to prove what the facts actually were about the injury of Miss Bichon just as if the original suit between Miss Bichon and the Furniture Company was being retried. The material inquiry upon the trial of the present case, if the

question of bad faith had any place therein, was not what the real or actual facts were relative to the accident and injury resulting therefrom, but was, what facts relative to such matters were known to the Indemnity Company and its agents which they should have considered in deciding whether said company should or should not have settled the case.

[4] What we have said disposes of all the complaints presented by appellant, and we are now brought to a consideration of the contention of appellee that the court erred in including in the judgment in favor of the Furniture Company interest on the $5,000, awarded it, from the 3d day of January, 1924, for that prior to said date appellee had tendered to appellant the $5,000 so awarded, together with interest thereon from the date of the rendition of the judgment in favor of Miss Bichon against the Furniture Company, said sum being all that appellee was bound to pay at that date under the terms of its policy.

We overrule appellee's complaint. There was no unconditional tender of all that appellee owed the Furniture Company. Such tender was made upon condition only that said company execute and deliver to appellee a full release to cover all claims which the Furniture Company might have arising out of the Bichon v. Stowers Furniture Company suit, or claim, or arising out of the injury to Miss Mamie Bichon set up in the plaintiff's suit of Bichon v. Stowers Furniture Company.

All that appellee had the right to demand was an instrument showing the payment of the sum of money to which the Furniture Company was entitled, and the Furniture Company had the right to refuse to accept the same under the conditions demanded.

Having reached the conclusions above expressed, it becomes our duty to in all things affirm the judgment, and it is accordingly so ordered.

Affirmed.